UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION



FILED
APR 0 5 2012

---

**FIRST DAKOTA NATIONAL BANK,**  Civ. 12-4061

Plaintiff,

vs.  COMPLAINT

**BANCINSURE, INC.,**

Defendant.

---

First Dakota National Bank ("First Dakota") for its causes of action against Defendant BancInsure, Inc. ("BancInsure"), states and alleges as follows:

## PARTIES

1. First Dakota is a national bank with its principal place of business in Yankton, Yankton County, South Dakota and branch banks throughout South Dakota, including Sioux Falls, Minnehaha County, South Dakota.

2. The defendant, BancInsure, Inc. ("BancInsure") is an Oklahoma insurance company headquartered in Oklahoma City, Oklahoma. It can be served with process on its registered agent, Lisa G. Bays, 5104 N. Francis Ave., Suite 101, Oklahoma City, Oklahoma 73118 or on its officers at PO Box 26104, Oklahoma City, Oklahoma 73126-0104.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties to this action and the power to determine the parties' respective rights and other legal obligations pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. This action arises from a financial institution bond issued by BancInsure to First Dakota in South Dakota.

4. BancInsure conducts business in South Dakota and upon information and belief is registered with the South Dakota Department of Insurance.

5.  Alternatively, the Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest or costs, and is between citizens of different states.

6.  Venue is proper before the Court pursuant to 28 U.S.C. § 1391(b)(1) because all of the relevant actions and transactions giving rise to First Dakota's bond claim took place within this judicial district and because BancInsure, upon information and belief, regularly transacts business in the State of South Dakota.

## BACKGROUND FACTS AND PROCEDURE

### I. The Bond

7.  BancInsure provides insurance coverage and bonds for financial institutions, including national banks like First Dakota. In that connection, BancInsure has provided First Dakota with both insurance and bond coverage since 1997.

8.  In the case at controversy, First Dakota and BancInsure are parties to a financial institution bond, specifically BancInsure Financial Institution Bond No. FIB 0010844 (the "Bond"). A true and correct copy of the Bond for the period of August 19, 2008, through August 19, 2011, is attached hereto as Exhibit 1 and is incorporated herein by reference.

9.  The Bond is a form of insurance policy designed to protect First Dakota from certain risks from its employees, including but not limited to, the risk of loss from dishonesty and forgery. See Exhibit 1, (A) (Dishonesty) and (D) (Forgery).

10. First Dakota pays premiums to BancInsure in exchange for scheduled coverage (minus certain deductibles) as provided for under the Bond. See Exhibit 1, Coverage Limits pages 1-2.

11. At all relevant times, First Dakota has paid BancInsure the premiums required to maintain the Bond in full force and to entitle First Dakota to the protections provided by the Bond.

12. The Bond states that BancInsure "agrees to indemnify the Insured [First Dakota] for" various items laid out in Sections A through W of the Bond.

13. Section (A) of the Bond insures First Dakota against, among other things, loan losses resulting directly from dishonest or fraudulent acts committed by an Employee with

the manifest intent to cause the Insured to sustain the loss or to obtain improper financial benefit for the Employee or another person or entity. See Exhibit 1, Insuring Agreements, Section (A).

14. Section (D) of the Bond insures First Dakota against, among other things, loan losses resulting directly from forgeries or alterations as more specifically spelled out therein. See Exhibit 1, Insuring Agreements, Section (D).

15. Section (E) of the Bond insures First Dakota against, among other things, loan losses resulting from specified loan documents, title documents or evidence of debt, including but not limited to forged guarantees and loan papers.

16. First Dakota relies upon the protections afforded by the Bond in conducting its business in the ordinary course.

17. First Dakota has incurred covered losses under the Bond (as more fully described below) but BancInsure has failed to pay First Dakota for those losses, specifically those related to its employee's handling of a particular business loan.

**II. Facts giving rise to coverage - Wayne Wassink/Terry Schulte.**

18. From early 2003 until December 31, 2009, First Dakota employed Wayne Wassink ("Wassink") as its loan officer.

19. Toward the end of Wassink's employment, certain irregularities were discovered by First Dakota, leading not only to his discharge but eventual indictment on July 7, 2010. Attached as Exhibit 2 is a true and correct copy of Wassink's indictment ("the Indictment").

20. As more specifically set forth in the Indictment, Wassink engaged in a scheme which predated his First Dakota employment but continued for years thereafter unknown to other officers or employees of First Dakota. In that connection, Wassink, by himself and/or with the assistance of a non-employee business associate, Doug Larsen, forged the name of Terry Schulte onto certain commercial loan documents over a period of years, making it appear that Mr. Schulte was obtaining and renewing a line of credit for certain commercial automobile loans when in fact he never signed the related loan documentation, whether renewal or documentary in nature. See Exhibit 2, Indictment, pgs. 2-10.

21. Upon discovery and extensive internal investigation, First Dakota ultimately terminated Wassink's employment at the end of 2009.

22. First Dakota began communicating its coverage concerns to BancInsure in 2009. Regular coverage communication occurred between BancInsure and First Dakota from that point until BancInsure ultimately denied First Dakota's claim on March 28, 2012.

23. Between early 2010 and the summer of 2011, because of the facts and circumstances surrounding its investigation, the indictment and its potential impact on bond coverage, BancInsure, both orally and in writing, and on repeated occasions, instructed First Dakota to not tender its claim under the bond until charges against Wassink were ultimately resolved.

24. In early 2011, BancInsure and First Dakota were in regular communication with one another regarding the Wassink-related claim on the bond. In that connection, BancInsure was provided the criminal case number of the Wassink matter and it in turn provided First Dakota with a blank proof of claim form in May 2011.

25. In May 2011, Wassink ultimately pled guilty and was sentenced to two lesser charges that did not result in a judicial determination of the bank fraud or Schulte loan-related acts giving rise to First Dakota's claim of bond coverage.

26. BancInsure instructed First Dakota to provide not just a signed and notarized proof of loss form but supporting documentation for the same, which required First Dakota to review multiple boxes of investigation and claim related materials. In its proof of loss, First Dakota made claims on the Schulte administered Wassink loan as well as two other loans on which Wassink was the supervising or primary loan officer.

27. First Dakota provided BancInsure a signed and notarized proof of loss form with supporting documentation on July 15, 2011.

28. BancInsure took over four (4) months to respond to First Dakota's proof of loss claim and did so on November 23, 2011. At that time, BancInsure denied two claims and asked for additional information regarding the Schulte loan administered by Wayne Wassink.

29. BancInsure's November 23, 2011 denial of coverage letter invited First Dakota to submit new documents and information related to the Wassink claim. As requested, First Dakota submitted the additional information to BancInsure over a period of several weeks.

30. First Dakota communicated its coverage concerns to BancInsure from the time its claim was initially denied in November 2011. BancInsure not only promised First Dakota that re-evaluation would occur promptly, but that in the eyes of certain BancInsure

representatives, bond coverage should have originally and/or would ultimately be provided for First Dakota's claim related to the Schulte loans administered by Wassink.

31. Rather than review the additional materials provided by First Dakota following the November 23, 2011, denial, BancInsure instead summarily denied First Dakota's review of coverage claims and materials by letter dated March 28, 2012, alleging for the first time that the claim is no longer timely because suit was not commenced within the two year period required by the bond from the date First Dakota discovered its loss.

32. BancInsure's 2012 denial of coverage letter does not rely on any other grounds to deny the claim except the failure to timely submit the same pursuant to the terms of its bond and a claim that a financial benefit was not received by Wassink, both of which issues have been repeatedly and demonstrably shown by the overwhelming weight of documentary evidence submitted and the resubmitted by First Dakota to BancInsure.

## *CLAIM 1 - DECLARATORY JUDGMENT AND COVERAGE CLAIM*

33. First Dakota realleges and reasserts paragraphs 1-32 and the exhibits referenced there as if fully set forth herein.

34. First Dakota submitted a valid claim on its BancInsure bond relating to the Terry Schulte loan administered by its former employee Wayne Wassink pursuant to sections A, D and/or E of the bond. In that connection, First Dakota followed all proper claim procedures by timely notifying BancInsure of the claim and providing BancInsure, both orally and in writing, all requested information at its disposal regarding Wassink as described in the Indictment.

35. First Dakota was told by BancInsure representatives not to submit a proof of loss on Wassink related bond claims until Wassink's charges were formally resolved by the criminal court.

36. Less than 60 days expired (from May 24, 2011 to July 12, 2011) from the time BancInsure provided its proof of loss claim form to First Dakota and the date First Dakota submitted the form with the claim-related documents.

37. BancInsure's actions, directions and representations to First Dakota from the time First Dakota put BancInsure on notice of potential losses related to Wayne Wassink and/or the Terry Schulte loan waived any policy language regarding First Dakota's timely submission of claims.

38. BancInsure's actions, directions and representations to First Dakota from the time First Dakota put BancInsure on notice of potential losses related to Wayne Wassink and/or the Terry Schulte loan estopp BancInsure from invoking any policy language regarding First Dakota's timely submission of claims.

39. At all times material, First Dakota acted within the applicable statute of limitations for submitting its claims to BancInsure. BancInsure violated the implied covenant of good faith and fair dealing in the contract by its express and implied actions. BancInsure instructed First Dakota not to even begin the claims process until Wassink's criminal charges were resolved, delayed responding to the initial claim once filed, requested more information from First Dakota at the time it initially denied the claim in November of 2011, and then suddenly denied the claim in March of 2012 on the basis of statute of limitations grounds which had never before been raised. BancInsure's conduct in denying the claim on statute of limitations grounds is not consistent with First Dakota's justified expectations given the pattern of communication between the parties.

40. BancInsure's bond constitutes a written and enforceable contract for certain coverages based upon certain acts or omissions.

41. BancInsure has breached its contract by failing to provide First Dakota with appropriately requested coverage under its bond claim involving Wayne Wassink and his administration of the Terry Schulte loan.

42. By breaching its contract with First Dakota, BancInsure has caused First Dakota damages totaling $248,423.16, which were the total amount of losses First Dakota suffered from Wayne Wassink's handling of the bogus Terry Schulte loan, exclusive of interest, attorney's fees or First Dakota's own investigative related costs in submitting and handling this claim with BancInsure.

## CLAIM 2 - BAD FAITH REFUSAL TO PAY CLAIM

43. First Dakota realleges and reasserts paragraphs 1-42 and the exhibits referenced there as if fully set forth herein.

44. BancInsure's actions in processing First Dakota's claim and in its refusal to pay the bond claim submitted by First Dakota were intentional, in bad faith, frivolous and entirely unfounded.

45. Over a period of years, BancInsure has systematically engaged in a patten of refusing to pay claims like that submitted by First Dakota.

46. In that connection, BancInsure has been and continues to be involved with multiple lawsuits in federal court that demonstrate a pattern and/or practice of denying coverage where courts later find coverage should have been provided.

47. BancInsure recently had it's "A"-rating reduced and thereafter recently announced to First Dakota and its other customers that it sold its renewal rights to in force insurance policies to AmTrust Financial Services Inc.

48. First Dakota suffered damages as a result of BancInsure and bad faith. Because BancInsure's denial of bond coverage is in bad faith, First Dakota is entitled to recover punitive damages.

### CLAIM 3 - VEXATIOUS REFUSAL TO PAY CLAIM

49. First Dakota realleges and reasserts paragraphs 1-48 and the exhibits referenced there as if fully set forth herein.

50. Because BancInsure's denial of bond coverage is vexatious pursuant to applicable South Dakota law, BancInsure is required to reimburse First Dakota for all reasonable attorney's fees accumulated in pursuit of its bond coverage.

Dated this 4th day of April, 2012.

*/s/ Steven K. Huff*

Steven K. Huff
Sheila S. Woodward
Johnson, Miner, Marlow, Woodward & Huff, Prof. LLC
200 W. Third St.
PO Box 667
Yankton, SD 57078
Telephone: (605) 665-5009
Facsimile: (605) 665-4788
E-Mail: steve@jmmwh.com; e-Mail: sheila@jmmwh.com
Attorneys for Plaintiff