UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| FIRST DAKOTA NATIONAL BANK, | ) | CIV. 12-4061-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | MOTION TO CERTIFY |
| BANCINSURE, INC., | ) | QUESTION |
| | ) | |
| Defendant. | ) | |

Plaintiff, First Dakota National Bank, moves this court to certify the following question to the South Dakota Supreme Court:

> SDCL 53-9-6 prohibits parties from contractually limiting the statute of limitations except in the case of a "surety contract." Is the Policy a "surety contract?"

Defendant, BancInsure, Inc., opposes the motion. The motion is granted.

First Dakota purchased a Financial Institution Bond from BancInsure to provide coverage for liability issues arising in the course of its operations. The bond provides in pertinent part:

> Legal proceedings for the recovery of any loss under this Bond shall not be brought prior to the expiration of sixty (60) days after the original proof of loss is filed with [BancInsure] or after the expiration of 24 months from the discovery of such loss, except that any action or proceeding to recover under this Bond on account of any judgment against the Insured in any suit mentioned in General Agreement (F), or to recover attorneys' fees paid in any such suit, shall be brought within 24 months from the date upon which the judgment and such suit shall become final.

On February 23, 2004, First Dakota loaned businessman Terry Schulte $250,000. The loan officer in charge of the Schulte loan was Wayne Wassink. He dealt with Schulte's agent and employee, Douglas Larsen. Wassink had worked with Schulte and Larsen for approximately twenty years as a loan officer at various banks. Over the next five years, the Schulte loan was reviewed annually and renewed. The interest on the Schulte loan was paid until the loan matured.

In October of 2009, Wassink met with Schulte because the Schulte loan was past due. Schulte told Wassink he did not have a line of credit with First Dakota and he suggested that Larsen must have forged the note. Wassink had always transacted business with Schulte through Schulte's intermediary, Larsen. Wassink was suspended by First Dakota after it learned that Wassink had not met with Schulte during the five years the $250,000 line of credit had been in place. After a subsequent investigation, First Dakota believed certain documents used to renew the Schulte loan had falsified signatures. Wassink was terminated by First Dakota on December 30, 2009.

Wassink and Larsen were indicted on federal charges of fraud and other related matters concerning the Schulte loan transaction. Larsen pleaded guilty to the charges. Wassink maintained his innocence, but he ultimately pleaded guilty to structuring and tax evasion on unrelated charges.

On July 12, 2011, First Dakota filed a proof of loss with BancInsure, seeking coverage under the bond for three loans, including the Schulte loan.

After requesting and receiving additional information from First Dakota, BancInsure denied coverage on all three claims. First Dakota agreed there was no coverage for two of the loans, but it maintained there was coverage for the Schulte loan. In March of 2012, BancInsure again denied coverage for the Schulte loan because more than two years had passed between the time the loss was discovered and the claim was made and because First Dakota had not shown sufficient facts to prove that the Schulte loan was a covered loss under the claimed insuring agreements.

First Dakota then initiated this action seeking coverage under the Financial Institution Bond. First Dakota also seeks damages for bad-faith denial of the claim and vexatious refusal to pay the claim. After BancInsure filed a motion for summary judgment, First Dakota moved to certify the question of whether a financial institution bond is a surety contract under SDCL 53-9-6.

> The United States Supreme Court has recognized that:
>
> Certification procedure allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.

*Arizonans for Official English v. Arizona,* 520 U.S. 43, 76 (1997). Under the laws of the state of South Dakota, a United States district court may ask the South Dakota Supreme Court to answer questions of law "if there are questions of law of this state involved in any proceeding before the certifying court which may be determinative of the cause pending in the certifying court and it appears to the

certifying court and to the Supreme Court that there is no controlling precedent in the decisions of the Supreme Court of this state." SDCL 15-24A-1. Whether a federal district court should certify a question of state law to the state's highest court is a matter "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele,* 74 F.3d 878, 881-82 (8th Cir. 1996).

The issue before this court is whether there is controlling precedent in the decisions of the South Dakota Supreme Court. In *Sheehan v. Morris, Inc.,* 410 N.W.2d 569, 570 (S.D. 1987), the South Dakota Supreme Court voided a contractual limitations period contained in an insurance policy holding that "the proper rule is that the law should set the limitations periods, not private contracts." *Sheehan* involved a surety contract, namely a performance bond.

The following year, the South Dakota legislature amended SDCL 53-9-6 to authorize a "surety contract" to limit the time for enforcement to not less than two years after the cause of action accrues. When the surety company tried to impose this two-year limitation to Sheehan's pending claim, the Supreme Court refused to retroactively apply SDCL 53-9-6 as amended because the legislative act did not clearly express an intent to do so. *See Sheehan v. United Pacific Ins. Co.,* 439 N.W.2d 117, 118 (S.D. 1989). The Supreme Court refused to address the alleged constitutional deficiencies because it could decide the case based on narrower grounds. *Id.* at 119.

The Supreme Court has not addressed the question of whether a fidelity bond constitutes a "surety contract" for purposes of the exception in SDCL 53-9-6. In other situations, however, the Supreme Court has continued to recognize its rule that "limitations periods should be set by law rather than by private contract." *Cnty. of Pennington v. St. Paul Fire & Marine Ins. Co.,* 508 N.W.2d 376, 378 (S.D. 1993). While the Eighth Circuit Court of Appeals found that a fidelity bond was a "surety contract" for purposes of SDCL 53-9-6 in *Resolution Trust Corp. v. Hartford Accident & Indem. Co.,* 25 F.3d 657 (8th Cir. 1994), this holding is not binding on the South Dakota Supreme Court particularly when it is interpreting the meaning of a South Dakota state statute.

BancInsure also alleges that the motion to certify is not timely. Because the motion to certify was made by First Dakota before the district court resolved the state-law issue, the court finds it was timely made. *See Perkins v. Clark Equip. Co.,* 823 F.2d 207, 210 (8th Cir. 1987) ("The appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling.").

The court finds there is a question of South Dakota state law that may be determinative of the cause pending before this court and it appears to this court that there is no controlling precedent in the decisions of the South Dakota Supreme Court. The court additionally finds that the motion was timely made. As a result, the motion to certify a question to the South Dakota Supreme Court

is granted. An order certifying the question will be entered separately. While the question is pending before the South Dakota Supreme Court, this matter will be stayed. It is

ORDERED that the motion to certify a question (Docket 31) is granted. This matter is stayed pending resolution of the question.

Dated December 31, 2013.

>BY THE COURT:
>
> /s/ *Karen E. Schreier*
> KAREN E. SCHREIER
> UNITED STATES DISTRICT JUDGE